1998 OK CIV APP 23

**Letha SHEPARD and Betty Coffee, Co-Personal Representatives of the Estates of Erica Lachelle Wall, Deceased, and Jesse Fulton Wall, Deceased, Letha Shepard, Personal Representative of the Estate of Patty Louise Wall, Deceased, and Betty Coffee, Personal Representative of the Estate of Rick Wall, a/k/a Ricky Wall, Deceased, Appellees,**

v.

**The STATE of Oklahoma, ex rel. DEPARTMENT OF MENTAL HEALTH, Appellant.**

**No. 87621.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 16, 1997.

Certiorari Denied March 5, 1998.

Robert Alan Rush, J. Duke Logan, Thomas J. McGeady, Logan & Lowry, LLP, Vinita, for Appellees.

W.A. Drew Edmondson, Attorney General of Oklahoma, James M. Robinson, Assistant Attorney General, Oklahoma City, for Appellant.

REIF, Judge.

¶ 1 This appeal arises from a suit by the personal representatives of the estates of four individuals whose deaths allegedly resulted from the negligent release of a patient from a hospital operated by the Department of Mental Health. Four days after his release, patient shot and killed his wife and two children, and then committed suicide with the same gun. It was undisputed that one of the evaluating doctors at the Department's hospital recommended that patient not live around guns, and that this recommendation was not communicated to patient's wife by the doctor who released him. The Department nonetheless requested sum-

mary judgment, directed verdict and judgment notwithstanding the verdict, arguing that its exemption from liability was established as a matter of law. The Department relied on (1) the parties' stipulation that the doctor's decision to release patient was "practicing medicine" or "rendering medical treatment," and (2) the declaration in 51 O.S. Supp.1997 § 152(5) that "in no event shall the state be held liable for the tortious conduct of any physician ... while practicing medicine or providing medical treatment to patients." The trial court rejected this and ruled that the issue of the Department's liability for negligent release was a question of fact. Case law reveals the Department's reliance on § 152(5) is misplaced and that the trial court properly submitted the question of liability to the jury.

█ ¶ 2 The Court in *Anderson v. Eichner*, 1994 OK 136, ¶ 10, 890 P.2d 1329, 1337, interpreted § 152(5) and held that it merely defined the "employee status" of the *particular physicians* named therein.[1] The court noted that "*state liability for* [THESE] physicians' torts while they are *practising medicine or providing medical treatment is expressly abrogated.*" The supreme court stated that: "The impact of this [non-liability] proviso is controlled by the context in which it is found. It must be construed to operate differently from the § 155 limits on state liability. Section 152's final provision is intended as a descriptive statement." *Id.* at ¶ 11, 890 P.2d at 1338. Section 152(5) deals only with the "teaching" physicians named therein and is *not* a general exemption of the state from liability for every state-employed doctor while practicing medicine or providing medical treatment. As the Attorney General has observed, the non-liability proviso in § 152(5) must be taken out of context in order to be read as a general exemption and, if taken out of context, creates an irreconcilable conflict with § 154(A)(2). *See* 21 Okl. Op. Att'y Gen. 106 (1990).

█ ¶ 3 Contrary to the Department's assertion, *Wofford v. Eastern State Hospital,* 1990 OK 77, 795 P.2d 516, squarely recognizes the liability of a state hospital for negligent release of a patient. The court's introductory summary of the opinion states, in pertinent part: "We hold that a *mental hospital* may have a duty to foreseeable victims injured due to the negligent release of a psychiatric patient, but that summary judgment [on such a claim] in this case was proper." *Id.* at ¶ 0, 795 P.2d at 517 (emphasis added). The opening sentence of the opinion plainly states, "We are asked to examine the liability of a *mental institution* for the release of a patient who later killed his stepfather." *Id.* at ¶ 1, 795 P.2d at 517 (emphasis added).

¶ 4 The opinion recounts that the plaintiff originally sued the hospital and two doctors and notes that one of the doctors had been dismissed, while the other doctor was granted a summary judgment which plaintiff did not appeal. The appeal in *Wofford* dealt exclusively with the grant of summary judgment *to the hospital* and the question of whether "a *mental hospital* could have a duty such as to render it liable in damages for the actions of a released patient." *Id.* at ¶ 7, 795 P.2d at 518 (emphasis added). In answering this question in the affirmative, the court cited the Restatement (Second) of Torts, § 315 (1965), and expressly noted "Under the Restatement approach the psychotherapist/patient relationship has been found to be a sufficient basis for imposing a duty on the therapist *and the hospital* for the benefit of persons injured by a released patient." *Id.* at ¶ 9, 795 P.2d at 518 (citations omitted) (emphasis added).

¶ 5 The supreme court upheld the summary judgment in favor of the state mental hospital in *Wofford* because (1) the killing of his stepfather by the released mental patient "was too remote to have been legally foreseeable," and (2) "the absence of evidence that the Hospital knew or should have known of [patient's] violent propensities at the time of his release." *Id.* at ¶ 22, 795 P.2d at 520.

---

1. Physicians acting in an administrative capacity, resident physicians, resident interns and faculty members while engaged in their teaching duties at either the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery are defined as employees of the state. *Anderson,* 1994 OK 136, 890 P.2d 1329; 51 O.S. Supp.1997 § 152(b).

¶ 6 In the instant case, however, the question of whether a killing four days after release was too remote to be legally unforeseeable was an issue for the jury, and there was ample, undisputed evidence that hospital knew of patient's violent propensities. In view of these considerations, the question of the Department's liability became "whether acts allegedly committed by those charged with release of mental patients fall below current recognized professional standards." *Nguyen v. State*, 1990 OK 21, ¶ 8, 788 P.2d 962, 966. Having determined and recorded that patient should not live around guns, a duty on the part of the Department's hospital arose to advise patient's wife (and any other foreseeable party with whom patient might live) of this recommendation and precaution. The trial court was correct in allowing the jury to decide whether hospital breached its duty and the contributing effect of any such breach of duty toward the deaths in question.

¶ 7 In addition to challenging its liability for negligent release, the Department alternatively argues that the evidence was insufficient to support a finding that the murdered children experienced mental pain and suffering and an award of damages for such detriment. It is sufficient to note that all of the evidence concerning patient's killing of his wife and children is circumstantial. Even though the trial court ruled that the evidence was insufficient to support claims based on survivorship—a ruling this court does not review or purport to pass on—it was still necessary for the jury to determine the circumstances of the children's death and the damages sustained as a consequence thereof. We cannot agree that there is a total lack of evidence supporting the jury's award of damages for mental pain and suffering that an act of violence normally engenders.

¶ 8 Finding no error as propounded by the Department, the judgment on the jury verdicts herein is AFFIRMED.

¶ 9 TAYLOR, V.C.J., and GOODMAN, P.J., concur.

