2001 OK 61

Carol DeLAUGHTER, individually and as surviving spouse and next of kin and on behalf of all heirs at law of Julius Paul DeLaughter, Jr., Deceased, Plaintiff/Appellant,

v.

STATE of Oklahoma, ex rel OKLAHOMA STATE DEPARTMENT of MENTAL HEALTH & SUBSTANCE ABUSE SERVICES d/b/a The Crisis & Intervention Center, and Nicasio Gutierrez, Jr., M.D., jointly and severally negligent, Defendants/Appellees.

No. 94,775.

Supreme Court of Oklahoma.

July 3, 2001.

Rehearing Denied May 28, 2002.

Jeff R. Laird, Jr., Foshee & Yaffe, Oklahoma City, OK, attorneys for Appellant Carol Delaughter, individually and as surviving spouse and next of kin and on behalf of all heirs at law of Julius Paul DeLaughter, Jr., Deceased.

Russell L. Hendrickson and Stefan Doughty, Pierce, Couch, Hendrickson, Baysinger and Green, Oklahoma City, OK, attorneys for Co–Appellee, Nicasio Gutierrez, Jr., M.D.

Attorney General W.A. Drew Edmondson and Jerry C. Blackburn, Office of the Attorney General, State of Oklahoma, Oklahoma City, OK, attorneys for Co–Appellee State of Oklahoma, et al.

WINCHESTER, J.

¶ 1 This matter concerns a medical malpractice action filed by appellant against Appellee Nicasio Gutierrez, Jr., M.D. (hereinafter "Dr. Gutierrez") arising from the suicide of appellant's spouse, Julius Paul DeLaughter, Jr., after appellee discharged Mr. DeLaughter from his care at Oklahoma County's Crisis and Intervention Center.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On September 10, 1998, Mr. DeLaughter was admitted to the Oklahoma County Crisis and Intervention Center, where Dr. Gutierrez provided treatment and care to him. Mr. DeLaughter was discharged from the Center on September 14, 1998. The record reflects that on September 16, 1998, Mr. DeLaughter set his house on fire and remained inside after it ignited. He sustained severe burns as a result of the blaze, from which he died on September 18, 1998.

¶ 3 The trial court granted Dr. Gutierrez's Motion for Summary Judgment, finding, as a matter of law, that he was an employee of the State of Oklahoma acting within the scope of his employment at all times during his care and treatment of Mr. DeLaughter, and thus was immune from tort liability pursuant to Oklahoma's Governmental Tort Claims Act. The Court of Civil Appeals, Division 4, affirmed the judgment of the trial court in favor of Dr. Gutierrez.

¶ 4 The record reveals no issues of disputed facts exist in the instant case. Accordingly, the sole issue we address on certiorari is whether Dr. Gutierrez is entitled to immunity under Oklahoma's Governmental Tort Claims Act. Upon *de novo* review, we hold that Dr. Gutierrez is immune from liability under 51 O.S.Supp.2000, § 153 [1] and is entitled to judgment as a matter of law.

---

1.  51 O.S.Supp.2000, § 153 provides:
    **Liability–Scope–Exemptions–Exclusivity**
    "A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
    B. The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdi-

## REVIEW OF SUMMARY PROCEEDINGS

¶5 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n,* 1984 OK 72, ¶5, 689 P.2d 947, 949; *Crockett v. McKenzie,* 1994 OK 3, ¶3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris,* 1980 OK 52, ¶9, 610 P.2d 782, 785. Our ruling must be made on the record that the parties actually presented and not on a record that is potentially possible. *Weeks v. Wedgewood Village, Inc.,* 1976 OK 72, ¶12, 554 P.2d 780, 784. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is *de novo. Brown v. Nicholson,* 1997 OK 32, ¶5 n. 1, 935 P.2d 319, 321 n. 1; *Manley v. Brown,* 1999 OK 79, ¶22, n. 30, 989 P.2d 448, 456 n. 30. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley,* 1999 OK 79, ¶22, n. 30, 989 P.2d at 456, n. 30.

## OKLAHOMA'S GOVERNMENTAL TORT CLAIMS ACT

¶6 The first impression issue before us concerns whether a state-employed physician

vision or employee at common law or otherwise."

**2.** 51 O.S.Supp.2000, § 152 provides in pertinent part:
   **Definitions**
   "As used in the Governmental Tort Claims Act:
   \*      \*      \*\* \* \*
   5. 'Employee' means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis.
   \*      \*      \*\* \* \*
   b. For the purpose of this act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:
   (1) physicians acting in an administrative capacity,

who is neither a faculty member at the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, nor a student at one of these institutions, is classified as a state "employee" and thus entitled to immunity for medical negligence under the Governmental Tort Claims Act *while practicing medicine.* Dr. Gutierrez's claim of immunity hinges upon our interpretation of the last sentence of the final paragraph contained in 51 O.S.Supp.2000, § 152(5)(b)(3) [2] that provides in pertinent part, the state shall not "be held liable for tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients."

¶7 Appellant argues that this exemption to the state's liability applies to all state-employed physicians who commit torts while practicing medicine or providing medical treatment to patients. Under appellant's interpretation, Dr. Gutierrez would not be entitled to immunity for any alleged medical malpractice committed relative to Mr. De-Laughter. Dr. Gutierrez asserts that this exemption to immunity applies only to the individuals described at the beginning of the paragraph, to-wit: physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University who are not acting in an administrative capacity or engaged in teaching duties.

   (2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, and
   (3) faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties.
   Physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state. However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients; ...."

¶ 8 We foreshadowed today's decision in *Anderson v. Eichner,* 1994 OK 136, 890 P.2d 1329, wherein we held *faculty* physicians were not immune from liability for torts that occurred while they practiced medicine. Our analysis of § 152 and its final paragraph included the following:

> "Section 152's final provision is intended as a descriptive statement. It clearly lays down the rule that, although the defendant physicians might otherwise be considered state employees when involved in the educational process, they nonetheless stand outside the scope of their employment whenever they engage in the practice of medicine."

*Anderson v. Eichner,* 1994 OK 136, ¶ 14, 890 P.2d 1329, 1338.

¶ 9 This language indicates the final paragraph of § 152(5)(b)(3) describes physicians involved in the educational process-those employed by the University of Oklahoma's Health Sciences Center . or the College of Osteopathic Medicine at Oklahoma State University. We also stated in *Anderson* that the legislature expressed *"an underlying intent* to subject faculty and student physicians to individual liability for torts committed while practising medicine," (*see Anderson v. Eichner,* 1994 OK 136, ¶ 15, 890 P.2d 1329, 1339) evidenced by the liability limit of one hundred thousand dollars ($100,000.00) in § 154(D) that is tailored to faculty and student physicians who practice medicine. Our holding in *Anderson* implies that the exemption from immunity contained in § 153(5)(b)(3) pertains only to faculty physicians, resident physicians and interns at one of the two educational institutions enumerated in the final paragraph of that section.[3].

¶ 10 Three years after *Anderson,* the Court of Civil Appeals, Division 4, interpreted the exemptions contained in § 152(5), including the final sentence of the paragraph contained in § 152(5)(b)(3), in a manner consistent with the implications of our *Anderson* holding.[4] Today, we visit the issue and concur.

## STATUTORY CONSTRUCTION

¶ 11 The intent of the legislature controls when interpreting statutes. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Board of County Commissioners of Tulsa County,* 2000 OK 2, ¶ 10, 995 P.2d 1124, 1125, *reh'g. denied,* (June 30, 1998), *appeal after remand,* 2000 OK 2, 995 P.2d 1124. It is presumed that the law-making body has expressed its intent in a statute and that it intended what it so expressed. *TXO Production Corp. v. Okl. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969. Rules of statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes. *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468. The primary goal of rules of statutory construction is to ascertain the legislature's intent. *Ledbetter v. Alcoholic Bev. Laws Enforcement,* 1988 OK 117, ¶ 7, 764 P.2d 172, 179. Such intent must be gleaned from the statute in view of its general purpose and object. *TXO Production Corp.,* 1992 OK 39 at ¶ 7, 829 P.2d at 968. In the instant case, statutory construction is unnecessary because the legislature's intent can be ascertained from the plain language of the Governmental Tort Claims Act.

## LEGISLATIVE INTENT

¶ 12 Section 152(5)(b)(1) states that "physicians acting in an administrative capacity" are employees of this state "regardless of the place in this state where their duties as

---

3. "The language of the Governmental Tort Claims Act is clear—faculty physicians engaged in teaching or in administrative duties and resident physicians and interns participating in a graduate medical education program are employees of the state acting within the scope of their employment *unless they are practising medicine.*"

*Anderson v. Eichner,* 1994 OK 136, ¶ 23, 890 P.2d 1329, 1340–1341

4. The court held:

> "[S]ection 152(5) deals only with the 'teaching' physicians named therein and is not a general exemption of the state from liability for every state-employed doctor while practicing medicine or providing medical treatment."

*Shepard v. State ex rel. Department of Mental Health,* 1998 OK CIV APP 23, ¶ 2, 957 P.2d 553, 555, *cert. denied* (March 5, 1998).

employees are performed." In addition to this subset of state employees given immunity from tort liability, § 152(5)(b)(2) defines another subset, to-wit: resident physicians and resident interns participating in graduate medical educations programs of the University of Oklahoma's Health Sciences Center or the College of Osteopathic Medicine at Oklahoma State University. Finally, § 152(5)(b)(3) defines a third subset of faculty members and staff of the two institutions—those engaged in teaching duties. The final paragraph excludes from these aforementioned subsets physician faculty members and staff of the two institutions who are not acting in an administrative capacity and who are not engaged in teaching duties. It provides that they are not considered employees or agents of the state and therefore are not entitled to immunity under the Governmental Tort Claims Act. The next sentence in the paragraph provides:

"However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients."

51 O.S.Supp.2000, § 152(5)(b)(3).

¶ 13 Although this sentence does not reiterate that the persons to whom it refers must be employed by the University of Oklahoma's Health Sciences Center or the College of Osteopathic Medicine at Oklahoma State University, every other sentence in the paragraph does so. Accordingly, this final sentence, by implication, also must refer to such persons. Any other interpretation would result in the nonsensical conclusion that the state never is liable for medical negligence. Such a conclusion also would conflict with § 154(A)(2) that provides for limits on the state's liability in cases involving tort claims against the University Hospitals and State Mental Health Hospitals operated by the Department of Mental Health and Substance Abuse Services "for claims arising from medical negligence."[5] Therefore, legislative intent dictates that state-employed physicians who do not fall within the exemptions contained in the final paragraph of § 152(5)(b)(3) are "employees" of the state of Oklahoma as defined by § 152(5) (*see fn. 2, infra*) and enjoy immunity from liability under § 152.1.[6]

██ ¶ 14 The exemptions from immunity contained in the final paragraph of § 152(5)(b)(3) apply only to those state-employed physicians who are physician faculty

---

**5.** 51 O.S.Supp.2000, § 154 provides in pertinent part:

**Extent of Liability–Punitive or exemplary damages-Joinder of parties-Severability of liability**

(A)(2)

". . . Except however, the limits of said liability for the University Hospitals and State Mental health Hospitals operated by the Department of Mental Health and Substance Abuse Services for claims arising from medical negligence shall be Two Hundred Thousand Dollars ($200,000.00). For claims arising from medical negligence by any licensed physician, osteopathic physician or certified nurse-midwife rendering prenatal, delivery or infant care services from September 1, 1991, through June 30, 1996, pursuant to a contract authorized by subsection (b) of Section 1–106 of Title 63 of the Oklahoma Statutes and in conformity with the requirements of Section 3 of this act, the limits of said liability shall be Two Hundred Thousand Dollars ($200,000.00); or

3. One Million Dollars ($1,000,000.00) for any number of claims arising out of a single occurrence or accident.

\* \* \*\* \* \*

D. The total liability of resident physicians and interns while participating in a graduate medical education program of the University of

Oklahoma College of Medicine, its affiliated institutions and the Oklahoma College of Osteopathic Medicine and Surgery shall not exceed One Hundred Thousand Dollars ($100,000.00)."

**6.** 51 O.S.Supp.2000, § 152.1, provides:

**Sovereign immunity**

"A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution."

members or staff persons at the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, who are not engaged in teaching duties and not acting in an administrative capacity, and who are, instead, practicing medicine or providing medical treatment to patients.

## CONCLUSION

¶ 15 We hold that Dr. Gutierrez is an employee of the state of Oklahoma and is immune from tort liability under the provisions of the Governmental Tort Claims Act set forth hereinabove. The exemptions from immunity pertaining to state-employed physicians contained in the final paragraph of § 152(5)(b)(3) are inapplicable to Dr. Gutierrez because he was not a physician faculty member or staff person at the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University. Appellee's Motion to Release Court of Appeals Opinion for Publication is denied.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT AFFIRMED.**

HARGRAVE, C.J.; HODGES, LAVENDER, SUMMERS, WINCHESTER, JJ., concur.

WATT, V.C.J., concurs in result.

OPALA, KAUGER, BOUDREAU, JJ., dissent.